FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 29 2019

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

William D. Hyslop
United States Attorney
Eastern District of Washington
George J.C. Jacobs III
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM OLDHAM MIZE, (3)<br><br>Defendant. | 2:18-CR-00232-TOR-3<br><br>Plea Agreement |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and George J.C. Jacobs, III, Assistant United States Attorney for the Eastern District of Washington, and Defendant WILLIAM OLDHAM MIZE (hereafter, "WILLIAM OLDHAM MIZE [-3]) and Defendant's counsel, John Nollette, agree to the following Plea Agreement:

1.     Guilty Plea and Maximum Statutory Penalties:

Defendant WILLIAM OLDHAM MIZE [-3] agrees to plead guilty to four felony Counts of the Indictment returned by the Grand Jury on December 18, 2018 (Counts 4, 5, 73 and 74). Defendant WILLIAM OLDHAM MIZE [-3] agrees to plead guilty to the following counts in the Indictment that each carry the statutory maximum penalties set forth below:

Plea Agreement- 1

(a)    Counts 4 and 5 charging Mail Fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2. Defendant understands that the maximum statutory penalties for these offenses are not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment;

(b)    Count 73 charging Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349. Defendant understands that the maximum statutory penalties for this offense is not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment; and

(c)    Count 74 charging Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 1349. Defendant understands that the maximum statutory penalties for this offense is not more than a 10-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment.

Defendant understands that the Court has the authority to impose consecutive sentences for each conviction. Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment, *see* 18 U.S.C. § 3583(e), without credit for time previously served on post-release supervision.

2.    The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Sentencing is a matter solely within the discretion of the Court. Defendant

Plea Agreement- 2

understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximum penalties stated in the Plea Agreement.

Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart or vary upward or downward under the appropriate circumstances.

Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement, or a basis for withdrawing his pleas of guilty.

3.    Waiver of Constitutional Rights:

Defendant understands that by entering his pleas of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a)    The right to a jury trial;

(b)    The right to see, hear, and question the witnesses;

(c)    The right to remain silent at trial;

(d)    The right to testify at trial; and

(e)    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands he retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney. Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

//

//

Plea Agreement- 3

4.    Elements of the Offenses:

The parties agree that, in order to convict Defendant of Mail Fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2, as charged in Counts 4 and 5,  the United States would have to prove beyond a reasonable doubt the following elements:

- *First*, on or about the dates set forth in Counts 4 and 5, in the Eastern District of Washington and elsewhere, Defendant WILLIAM OLDHAM MIZE [-1] (hereinafter "MIZE [-1]") knowingly and willfully engaged in a scheme and artifice to defraud insurance companies to obtain money from insurance companies by means of false and fraudulent pretenses, representations, and promises as described in Counts 4 and 5;

- *Second*, Defendant WILLIAM OLDHAM MIZE [-3] knowingly and intentionally aided and abetted Co-Defendant MIZE [-1] to commit the crime of knowingly and willfully engaging in a scheme and artifice to defraud insurance companies to obtain money from insurance companies by means of false and fraudulent pretenses, representations, and promises as described in Counts 4 and 5;

- *Third*, the statements made or facts omitted as part of the scheme were material; that is they had a natural tendency to influence, or were capable of influencing, insurance companies to part with money or property as described in Counts 4 and 5;

- *Fourth*, Defendant WILLIAM OLDHAM MIZE [-3] acted with the intent to defraud; that is the intent to deceive or cheat;

- *Fifth,* Co-Defendant MIZE [-1] used, or caused to be used, the mails as described in Counts 4 and 5 to carry out an essential part of the scheme; and

- *Sixth,* Defendant WILLIAM OLDHAM MIZE [-3] acted before the crime of mail fraud as described in each Count was completed.

Plea Agreement- 4

The parties agree that, in order to convict Defendant of Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1346, as charged in Count 73, the United States would have to prove beyond a reasonable doubt the following elements:

- *First*, beginning no later than November 5, 2011, and continuing through on or about April 12, 2018, in the Eastern District of Washington and elsewhere, Defendant WILLIAM OLDHAM MIZE [-3] together with Co-Defendants named in the Indictment and others, in some way and manner, agreed to try and accomplish a common and unlawful plan to commit mail and wire fraud as charged in the Indictment; and

- *Second*, Defendant WILLIAM OLDHAM MIZE [-3] knew the unlawful purpose of the plan and willfully joined the plan.

The parties agree that, in order to convict Defendant of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 1349, as charged in Count 74, the United States would have to prove beyond a reasonable doubt the following elements:

- *First*, beginning no later than October 19, 2013, and continuing through on or about April 4, 2017, in the Eastern District of Washington and elsewhere, Defendant WILLIAM OLDHAM MIZE [-3] together with Co-Defendants named in the Indictment and others, in some way and manner, agreed to try and accomplish a common and unlawful plan to commit healthcare fraud as charged in the Indictment; and

- *Second*, Defendant WILLIAM OLDHAM MIZE [-3] knew the unlawful purpose of the plan and willfully joined the plan.

//

//

Plea Agreement- 5

5.    Factual Basis and Statement of Facts:

The parties stipulate and agree that the United States could prove the following facts beyond a reasonable doubt at trial, and these facts constitute an adequate factual basis for Defendant's guilty pleas.  This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

*Conspiracy*

*(Counts 73, 74)*

Beginning no later than November 5, 2011, and continuing through on or about April 12, 2018, in the Eastern District of Washington and elsewhere, Defendant WILLIAM OLDHAM MIZE [-3] (hereinafter "MIZE [-3]"),[1] with Co-Defendants WILLIAM OLDHAM MIZE (hereinafter "MIZE [-1]"), SANDRA VICTORIA TALENTO (hereinafter "TALENTO"), ANGELA DAWN TARDY (hereinafter "TARDY"), RYAN FOLKS PARK (hereinafter "PARK"), MISAEL REYES-TAJIMAROA (hereinafter "REYES-TAJIMAROA"), JESSICA ALEXANDRA GONZALEZ (hereinafter "GONZALEZ [-7]"), BONNIE JEAN BONNEY hereinafter "BONNEY"), BRITTANY JOE HARRIS (hereinafter "HARRIS"), KIMBERLY RITA BOITO (hereinafter "BOITO"), CHRISTOHPER JOSEPH FRANGELLA "(hereinafter FRANGELLA"), RICHARD RONALD WELLS (hereinafter "WELLS"), ALEXANDER ARCEO (hereinafter "ARCEO"), RAUL A. GONZALEZ (hereinafter "GONZALEZ [-14]"), TERESA ANN GONZALEZ (hereinafter "GONZALEZ [-15]"), MICHELE LEE SMITH (hereinafter "SMITH"), MATTHEW DAVID CARTER (hereinafter "CARTER"), JOSE EVERARDO MEZA-AMEZCUA (hereinafter "MEZA-AMEZCUA"), STEPHANIE STOCK

---

[1] Defendant MIZE [-3] is the son of Defendant MIZE [-1] and the brother of Defendant TARDY.

Plea Agreement- 6

(hereinafter "STOCK"), MICHAEL ADAM WHITE (hereinafter "WHITE"), "JASON ALLAN WESTFALL (hereinafter "WESTFALL"), RANDY CARL SHARP (hereinafter "SHARP") and others:

(a)  knowingly, and with intent to defraud, devised and intend to devise a material scheme and artifice to defraud various insurance companies and to obtain money and property from insurance companies by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and did knowingly cause to be delivered by mail matter by the United States Postal Service and by private and commercial interstate carrier, according to directions thereon, for the purpose of executing the scheme and artifice;

(b)  knowingly, and with intent to defraud, devised and intend to devise a material scheme and artifice to defraud various insurance companies and to obtain money and property from insurance companies by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice.

Co-Defendant MIZE [-1] devised a scheme and artifice to defraud insurance companies and to obtain money and property from insurance companies by materially false and fraudulent pretenses, representations, and promises. Defendant [MIZE-3] conspired with Co-Defendants MIZE [-1], TALENTO, TARDY, PARK, REYES-TAJIMAROA, GONZALEZ [-7], BONNEY, HARRIS, BOITO, FRANGELLA, WELLS, ARCEO, GONZALEZ [-14], GONZALEZ [-15], SMITH, CARTER, MEZA-AMEZCUA, STOCK, WHITE, WESTFALL, SHARP and others and aided

Plea Agreement- 7

and abetted them to commit the crime of mail fraud and wire fraud. The object of the scheme and artifice to defraud was for Co-Defendants MIZE [-1] and TALENTO, Defendant MIZE [-3], and their co-conspirators, to enrich themselves by defrauding victim insurance companies through filing and collecting payment on fraudulent insurance claims for property damage, wage loss, and bodily injury. To that end, the Defendants deliberately staged a series of accidents.

In furtherance of the scheme and artifice to defraud, co-conspirators would allow Co-Defendant MIZE [-1] to use his or her vehicle for the purpose of staging an automobile accident and obtaining an insurance payout. Co-Defendant MIZE [-1] would deliberately drive the pre-planned "at fault" vehicle into the pre-planned "no fault" vehicle at a pre-planned location. Defendant MIZE [-1] would then exit the vehicle he purposely crashed and be driven away from the staged accident scene in a third vehicle before police and emergency personnel arrived. For some staged accidents, after Co-Defendant MIZE [-1] deliberately crashed a vehicle into another, he would get into the "no-fault" vehicle and fake being an accident victim. A co-conspirator would falsely represent that he or she was the driver of the "at fault" vehicle and caused the accident. Co-conspirators, like Defendant MIZE [-3] also agreed to stage stair fall accidents with Co-Defendant MIZE [-3] and others.

Prior to a staged accident, Co-Defendant MIZE [-1] purposely inflicted injuries on a co-conspirator to mislead responders and insurance companies into believing the co-conspirator was injured in the accident and to increase insurance payouts. Co-Defendant MIZE [-1] required co-conspirators to urinate in a bottle and pour urine on their clothing to create the false and misleading impression that a co-conspirator suffered a loss of consciousness.

Defendant MIZE [-3] and Co-Defendants and others made and caused to be made false material representations to police, emergency and medical personnel, and insurance company representatives about the manner in which the accident occurred and the cause, nature and extent of their injuries. Often using fake names and

Plea Agreement- 8

identities, co-conspirators and co-schemers would sign and send documents to victim insurance companies appointing Co-Defendant MIZE [-1], who also used fake names and identities depending on the accident, as their "representative" or "power of attorney" in connection with the fraudulent insurance claims.

After each staged accident, Defendant MIZE [-3] and Co-Defendants MIZE [-1], TALENTO, TARDY, PARK, REYES-TAJIMAROA, GONZALEZ [-7], BONNEY, HARRIS, BOITO, FRANGELLA, WELLS, ARCEO, GONZALEZ [-14], GONZALEZ [-15], SMITH, CARTER, MEZA-AMEZCUA, STOCK, WHITE, WESTFALL, SHARP and others submitted and caused to be submitted fraudulent property damage, wage loss, medical, and bodily injury claims with victim insurance companies. To conceal the fraudulent nature of the scheme, Defendant MIZE [-3], Co-Defendants MIZE [-1], TALENTO and others often used fictitious names, false and misleading identification documents, misleading social security numbers, dates of birth, employment and salary information, fictitious familial relationships, and email addresses. The Defendants falsely claimed that they suffered head, knee, shoulder and other injuries from the staged accidents. Defendant MIZE [-3], Co-Defendants MIZE [-1], TALENTO, and others communicated with the victim insurance companies about the fraudulent claims via interstate telephone calls, facsimiles, emails, and mailings.

In furtherance of the fraudulent scheme, Defendant MIZE [-3], Co-Defendants MIZE [-1], TALENTO, and others sought follow-up emergency room and medical treatment for fictitious and fabricated accident symptoms and injuries. Acting as a co-conspirator's "representative," Co-Defendant MIZE [-1] would compile and submit to the victim insurance companies false and misleading medical and billing records to increase the settlement payouts he negotiated on a co-conspirator's behalf.

In furtherance of the scheme, Co-Defendant MIZE [-1] instructed a co-conspirator to accompany another co-conspirator, like Defendant MIZE [-3] who was playing injured accident victim to the hospital and have them falsely represent that he

Plea Agreement- 9

or she was experiencing concussion-related symptoms caused by the accident, when in truth and fact there were no such injuries or symptoms.

During the claim process for the staged accidents, Co-Defendant MIZE [-1] and co-conspirators, like Defendant MIZE [-3], made and caused to be made various false representations to the victim insurance companies, including as to (a) the conditions that caused the crash or accident; (b) who was driving at the time of the crash; (c) the true identities of the individuals involved; (d) the income and employment status of the individuals involved; and (e) whether and to what extent they suffered injuries as a result of the staged automobile or other accident.

Co-Defendant MIZE [-1] and co-conspirators, like Defendant MIZE [-3], collected payouts on their fraudulent claims from the victim insurance companies. For his role planning the details of a staged accident, and acting as a co-conspirator's "representative" to the victim insurance companies, Co-Defendant MIZE [-1] received a significant portion of the monies paid on the fraudulent claims. The amount of money a co-conspirator received depended on the role Co-Defendant MIZE [-1] had them play in a staged accident. Co-Defendant MIZE [-1] and co-conspirators, like Defendant MIZE [-3], caused victim insurance companies to issue payments to them via mailed check and wire transfer to settle fraudulent bodily injury, wage loss, and property damage claims arising from staged accidents.

Beginning on or about June 22, 2005,[2] and continuing through on or about October 19, 2013, Defendant MIZE [-3] directly participated in approximately six

---

[2] When interviewed, UCC-2 stated that the first fake accident she knew Defendant MIZE [-3] was involved in involved him falling into a hole. The date of the staged accident was June 22, 2005. The loss amount of this accident is unknown due to the unavailability of records.

Plea Agreement- 10

accidents staged by Co-Defendant MIZE [-1] and others.[3]  The fraudulent insurance proceeds generated by the six staged accidents totaled approximately $631,910.34. Defendant MIZE [-3] also recruited other individuals into the scheme, including Co-Defendants MISAEL REYES-TAJIMAROA, JASON ALLAN WESTFALL, RANDY CARL SHARP and UCC-2.  Defendant MIZE [-3] and his former spouse, UCC-2, received approximately $211,000 through the fraudulent scheme. Approximately $25,000 of the fraud proceeds were used to pay for Defendant MIZE [-3] and UCC-2's wedding reception.  Defendant MIZE [-3] also conspired with Co-Defendants MIZE [-1], TALENTO, PARK, REYES-TAJIMAROA, HARRIS, BOITO, SHARP and others to execute a scheme to defraud health care benefit programs and to obtain, by means of false and fraudulent pretenses and representations money and property owned by, and under the custody and control of, health care benefit programs[4] as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for healthcare benefits, items and services.

*November 5, 2011, Staged Ceiling Fan Accident*

On or about November 5, 2011, Defendant MIZE [-3] and Co- Defendants MIZE [-1], TALENTO, and an unindicted co-conspirator (hereinafter, "UCC-2") staged a ceiling fan accident at UCC-2's residence in Nevada.  Co-Defendant MIZE [-1] inflicted an injury on UCC-2's head and had her pour urine on herself to make it appear she was seriously injured.  Co-Defendant MIZE [-1] (as "Bill Babaian")

---

[3] In approximately 2014, UCC-2 learned that Defendant MIZE [-3] was addicted to prescription pain medication.  When interviewed, another co-conspirator described Defendant MIZE [-3] as Co-Defendant MIZE [-1]'s "right hand" person in the scheme until Defendant MIZE [-3]'s role lessened as a result of his prescription drug addiction.

[4] Progressive, USAA, Farmers, CSAA, Safeco, Hertz, GEICO, Allied, Nationwide, AMCO, CSAA, Metlife, Allstate, State Farm.

Plea Agreement- 11

subsequently filed a fraudulent insurance claim for UCC-2 in which they falsely represented and adopted each others' false representations that, among other things, a fan fell from the ceiling, hitting UCC-2 in the head, and causing serious injuries. Co-Defendant MIZE [1] (as "Bill Babaian") submitted insurance claim documents, knowing they were false. In exchange for releasing her claim, Defendant MIZE [-3] and UCC-2 received an insurance settlement payout of approximately $60,000, which was split with Co-Defendant MIZE [-1].

*December 17, 2012, Staged Stair Fall Accident*

On or about December 17, 2012, Defendant MIZE [-3] and Co- Defendants MIZE [-1], TALENTO, REYES-TAJIMAROA and "UCC-2" staged a stair fall accident at Defendant MIZE [-3] and UCC-2's residence in Henderson, Nevada. Co-Defendants MIZE [-1] and REYES-TAJIMAROA subsequently filed a fraudulent insurance claim for REYES-TAJIMAROA in which they falsely represented and adopted each others' false representations that, among other things, the accident occurred because UCC-2's dog caused Co-Defendant REYES-TAJIMAROA to fall down the stairs causing a knee and other injuries. Co-Defendant MIZE [-1] submitted insurance claim documents, knowing they were false. In exchange for releasing his claim, Co-Defendants MIZE [-1], TALENTO and REYES-TAJIMAROA received a settlement payout of approximately $120,000 from AAA Nevada Fire & Casualty Insurance.[5]

*January 19, 2013, Staged Automobile Accident*

On or about January 19, 2013, Defendant MIZE [-3] and Co-Defendants MIZE [-1], PARK, WHITE and others staged an accident at the intersection of Horizon

---

[5] CSAA Insurance Group and its members, including AAA Nevada Fire & Casualty and AAA Insurance ("CSAA/AAA") of Walnut Creek, California, were in the business of offering homeowners and automobile insurance to customers in California, Washington and Nevada.

Plea Agreement- 12

Ridge Avenue and Rocky Basin Avenue in Las Vegas, Nevada. The staged accident involved a 2010 Kia Forte registered to and insured by an individual not named herein being purposely driven by Co-Defendant MIZE [-1] into a 2002 Mercedes Benz E320. Defendant MIZE [-3] and Co-Defendants MIZE [-1], PARK and WHITE subsequently filed fraudulent insurance claims in which they falsely represented and adopted each others false representations that, among other things, Defendant MIZE [-3] and Co-Defendant PARK suffered injuries as a result of the accident. After the staged accident, Co-Defendant MIZE [-1] sent insurance claim documents on behalf of Co-Defendant PARK and Defendant MIZE [-3], and an individual not named herein, knowing that they were false. Defendant MIZE [-3] provided false and misleading information to an insurance company representative during a telephonic interview regarding the claims. In exchange for releasing their claims, Defendant MIZE [-3] and Co-Defendants MIZE [-1], PARK, and WHITE received settlement payouts totaling approximately $215,770.59 from USAA Casualty Insurance Company.[6]

*April 14, 2013, Staged Automobile Accident*

On or about April 14, 2013, Defendant MIZE [-3] and Co-Defendants MIZE [-1], TALENTO, PARK, and an individual not named herein staged an accident at the intersection of Hualapai Way and Reno Avenue in Las Vegas, Nevada. The staged accident involved a 2004 Infiniti FX35 registered to and insured by an individual not named herein being purposely driven by Co-Defendant MIZE [-1] into a 2002 Jaguar Vanden Plas registered to and insured by Co-Defendant TALENTO. Defendant MIZE [-3] and Co-Defendants MIZE [-1], TALENTO, PARK and an individual not named herein subsequently filed fraudulent insurance claims in which they falsely

[6] United Services Automobile Association ("USAA") and its members, including USAA General Indemnity Company, of San Antonio, Texas, was in the business of offering automobile insurance to its customers in Washington and Nevada.

Plea Agreement- 13

represented and adopted each others false representations that, among other things, Co-Defendants TALENTO, MIZE [-3] and PARK suffered injuries as a result of the accident. After the staged accident, Co-Defendant MIZE [-1] sent insurance claim documents on behalf of Defendant MIZE [-3] and Co-Defendants TALENTO and PARK and an individual not named herein, knowing that they were false. In exchange for releasing their claims, Defendant MIZE [-3] and Co-Defendants MIZE [-1], TALENTO, PARK and individual not named herein received settlement payouts totaling approximately $335,698.13 from Progressive and CSAA.[7]

*October 19, 2013, Staged Stair Fall Accident (Counts 4, 5)*

On or about October 19, 2013, Defendant MIZE [-3], Co-Defendant MIZE-1 and an unindicted co-conspirator (hereinafter, "UCC-1") staged a stair fall accident at UCC-1's residence in California. Co-Defendant MIZE[-1] (as "William Westfall") and Defendant MIZE [-3] (as "Allan W. Westfall") subsequently filed a fraudulent insurance claim for Defendant MIZE [-3] (as "Allan W. Westfall") in which they falsely represented and adopted each other's false representations that, among other things, the accident occurred because UCC-1's large dog jumped on, or knocked forward, Defendant MIZE [-3] (as "Allan W. Westfall"), causing him to fall down 8-10 stairs. Co-Defendant MIZE [-1] (as "William Westfall"), Defendant MIZE [-3] (as "Allan W. Westfall"), UCC-1 and another unindicted co-conspirator (hereinafter, "UCC-2") falsely represented that Defendant MIZE [-3] (as "Allan W. Westfall")

---

[7] Progressive Group of Insurance Companies ("Progressive") of Mayfield, Ohio, were in the business of offering automobile insurance to customers in Washington and Nevada. Progressive provided health care benefit programs that provided coverage for bodily injuries sustained from accidents caused by automobiles covered under Progressive insurance policies. CSAA provided health care benefit programs that provided coverage for bodily injuries sustained from accidents caused by automobiles covered under CSAA insurance policies.

Plea Agreement- 14

suffered serious head and other injures from the accident. Before emergency personnel arrived, Co-Defendant MIZE [-1] poured urine on Defendant MIZE [-3]'s clothing to falsely create the impression that Defendant MIZE [-3] (as "Allan W. Westfall") suffered a loss of consciousness or a seizure. Co-Defendant MIZE [-1] (as "William Westfall") and Defendant MIZE-3 (as "Allan W. Westfall") submitted insurance claim documents, knowing they were false. In exchange for releasing his claim, on or about June 6, 2014, Defendant MIZE [-3] (as "Allan W. Westfall") received a settlement payout of approximately $176,000.00 from Liberty Mutual.[8]

On or about the dates listed below, in the Eastern District of Washington and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, Defendant MIZE [-3], Co-Defendant MIZE [-1], UCC-1 and UCC-2 knowingly caused to be delivered, and aided and abetted each other and others known and unknown to cause to be delivered, through the United States Mail, the mail matter described below:

| Approximate Mailing Date | Description |
| --- | --- |
| 3/10/2014[9] | Settlement Demand Letter of $235,000 for "Allan Westfall" and supporting documents mailed from within the State of Washington to Liberty Mutual Insurance Company outside the State of Washington |
| 5/27/2014[10] | Release and Settlement of "Allan Westfall's" claim mailed from within the State of Washington to Liberty Mutual Insurance Company outside the State of Washington |

[8] Liberty Mutual Group and its members, including Liberty Mutual Insurance Company ("Liberty Mutual") of Boston, Massachusetts, were in the business of offering automobile and homeowners insurance to customers in California, Washington, and Nevada.

[9] Count 4.

[10] Count 5.

Plea Agreement- 15

6.    The United States Agrees Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Indictment or this investigation, unless Defendant breaches this Plea Agreement any time before sentencing.

7.    United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing.

(a)    Base Offense Level:

The parties agree and stipulate that Defendant's Base Offense Level is 7. *See* USSG §2B1.1(a).

(b)    Specific Offense Characteristics:

Defendant acknowledges that the United States will recommend that Defendant's Base Offense Level is increased 14-levels[11] for a loss greater than $550,000 but less than $1,500,000 attributable to Defendant MIZE [-3] (as opposed to a higher loss amount attributable to co-Defendants MIZE [-1] and TALENTO). Defendant reserves the right to object to this increase. Defendant will recommend that his Base Offense Level is increased by a lower level based on a lower loss amount. The United States reserves the right to oppose this lesser increase in favor of a 14-level increase. Defendant acknowledges that the United States will recommend that Defendant's Base Offense Level be increased 2-levels because the offense otherwise involved sophisticated means and Defendant intentionally engaged in or caused the

_____

[11] USSG §2B1.1(b)(1)(H).

Plea Agreement- 16

conduct constituting sophisticated means.[12]  Defendant reserves the right to object to this 2-level increase.  The parties are free to argue for or against any other specific offense characteristics and/or any other enhancements under the USSG found in the Pre-Sentence Investigation Report.

(c)    Mitigating Role:

Defendant will recommend that his offense level be decreased because he was a minimal or minor participant in the criminal activity.[13]  The United States reserves the right to object to any role reduction.

(d)    Multiple Count Analysis:

The parties agree that Counts 4, 5, 73 and 74 involve substantially the same harm and should be grouped together into a single Group.  USSG § 3D1.2.

(e)    Acceptance of Responsibility:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters pleas of guilty no later than August 29, 2019, the United States will move for a 3-level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to USSG §3E1.1(a), (b).

The parties agree that the United States may at it option and upon written notice to Defendant, not recommend a 3-level reduction for acceptance of responsibility if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever, or if Defendant tests positive for any controlled substance.

//

//

---

[12] USSG §2B1.1(b)(10)(C).

[13] USSG §3B1.2.

Plea Agreement- 17

(f)   Criminal History:

The parties make no agreement on Defendant's criminal history category, which shall be determined by the Court after the Presentence Investigative Report is completed.

8.   Departure:

The Defendant is free to move for a departure and/or variance under 18 U.S.C. § 3553. The United States intends to seek a sentence within the guidelines range determined by the Court.

However, if the Defendant fully satisfies the terms of "Substantial Assistance" as defined below, the United States will seek a downward departure based on factors codified at USSG §5K1.1.

9.   Substantial Assistance:

The United States agrees to provide Defendant the opportunity to provide substantial assistance to the United States. USSG §5K1.1 (Substantial Assistance to Authorities) provides as follows:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a)   The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> (1)   the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> (2)   the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
> (3)   the nature and extent of the defendant's assistance;
> (4)   any injury suffered, or any danger or risk of injury to the defendant or his/her family resulting from his/her assistance;
> (5)   the timeliness of the defendant's assistance.

Plea Agreement- 18

USSG §5K1.1(a)(1)-(5).

Defendant acknowledges that he has not completed providing substantial assistance at the time of the entry into this Plea Agreement and that the United States is not bound to move for a downward departure unless Defendant provides information that is fully truthful and complete and that Defendant testifies truthfully and completely at any hearing, trial, grand jury proceeding, or other court proceeding if called as a witness by any party. Defendant understands that it may be necessary to continue his sentencing date in order to verify full compliance with this agreement. The decision to file a motion recommending substantial assistance rests solely with the United States.

Defendant acknowledges that if he fails to complete his efforts to provide substantial assistance by refusing reasonable requests to meet with law enforcement agents, by providing false information or withholding information from agents, or by failing to testify completely, truthfully, and honestly, the United States is under no obligation to file a motion for a downward departure pursuant to 18 U.S.C. § 3553(e) or USSG §5K1.1, and this agreement shall be considered breached and null and void. The United States may then prosecute Defendant on all available charges, including making false statements and perjury.

10.    Incarceration:

(a)    Length of Imprisonment:

(i)    *With a USSG §5K1.1 "Substantial Assistance" Motion:*

If the Defendant fully provides "substantial assistance," as set forth in Paragraph 9, supra, the United States will evaluate that performance prior to sentencing in this matter and will seek a downward departure from the final and applicable USSG range and will argue for a sentence of incarceration based on the extent, scope, and value of the Defendant's yet to be fully achieved cooperation/substantial assistance. Under these circumstances, the Defendant is free to recommend any sentence he deems appropriate. The Defendant further understands

Plea Agreement- 19

that the Court will ultimately determine the applicable sentencing guideline range and is not bound to follow the recommendations of the parties and that the Court may also depart or vary downward or upward under the appropriate circumstances from the applicable advisory sentencing range. The decision to file a motion recommending substantial assistance rests solely with the United States.

(ii)    *Without a USSG §5K1.1 "Substantial Assistance" Motion:*

If the Defendant does not provide "substantial assistance," as set forth in Paragraph 9, *supra*, the United States agrees to recommend a sentence of imprisonment within the adjusted sentencing range under the USSG as determined by the Court at the time of sentencing. Under these circumstances, the Defendant is free to recommend any sentence he deems appropriate. Again, the Defendant understands that the Court will ultimately determine the applicable sentencing guideline range and is not bound to follow the recommendations of the parties and that the Court may also depart or vary downward or upward under the appropriate circumstances from the applicable advisory sentencing range.

11.    Criminal Fine:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

12.    Restitution:

The parties agree restitution is required pursuant to 18 U.S.C. §§ 3663(a), 3663A, and 3664. With respect to restitution, the parties agree to the following:

(a)    Restitution Amount and Interest:

Defendant acknowledges that the United States will recommend that the total joint and several restitution amount owed amongst the co-defendants involved in Counts 4, 5, 73 and 74 (for the staged accidents Defendant was directly involved in) of the Indictment is approximately $631,910.34. *See* 18 U.S.C. § 3664(h). Defendant reserves the right to object to this amount and will be recommending a lower amount. Defendant acknowledges that the United States will be recommending that the total

Plea Agreement- 20

amount of restitution owed by Defendant is limited to $211,000.00. Defendant will be recommending that the total amount of restitution owed by Defendant is a lower amount. Defendant understands that the amount of restitution he owes shall be resolved by the Court by a preponderance of the evidence. The interest on this restitution amount should be waived.

(b) Payments:

The parties agree the Court will set a payment schedule based on Defendant's financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of her net monthly income towards her restitution obligation.

(c) Treasury Offset Program and Collection:

Defendant understands the Treasury Offset Program collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until a fine or restitution order is paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of

Plea Agreement- 21

perjury and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until such time as the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

(d)　Notifications:

Defendant agrees to notify the Court and the United States of any material change in her economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect her ability to pay restitution. *See* 18 U.S.C. § 3664(k). Further, Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. This obligation ceases when the restitution is paid-in-full.

Defendant agrees to notify the United States of any address change within 30 days of that change. *See* 18 U.S.C. §3612(b)(F). This obligation ceases when the restitution is paid-in-full.

13.　Forfeiture:

The parties agree forfeiture applies. *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c). With respect to forfeiture, the parties agree to the following:

(a)　Forfeitable Property:

The United States shall seek a forfeiture money judgment in this matter and will not seek to forfeit specific property, except as set forth in this Plea Agreement or authorized by law. The United States will not seek to forfeit proceeds in an amount exceeding what Defendant actually obtained as a result of the crime. *See Honeycutt v. U.S.*, 137 S. Ct. 1626 (2017).

Plea Agreement- 22

(b)   Money Judgment:

Defendant agrees to forfeit to the United States all right, title, and interest in the following property: a money judgment, in an amount to be determined at or before sentencing, but not more than $211,000.00, which represents the amount of proceeds Defendant obtained as a result of his illegal conduct.

(c)   Substitute Property:

Defendant understands the United States may seek for Defendant to forfeit substitute property in satisfaction of the money judgment if the United States can establish the following regarding the above-described property (*i.e.*, the money judgment): a) it cannot be located upon the exercise of due diligence; b) it has been transferred or sold to, or deposited with, a third party; c) it has been placed beyond the Court's jurisdiction; d) it has substantially diminished in value; e) it has been commingled with other property and cannot be divided without difficulty. *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(p). The United States will not seek to forfeit substitute property from other defendants or co-conspirators; it may only forfeit substitute property from Defendant. *See* 21 U.S.C. § 853(p).

(d)   Application of Forfeited Property to Restitution:

Defendant understands the United States will seek restitution for the victim(s) in this case independent of this money judgment. It is the parties' mutual understanding that the United States Attorney's Office will seek approval to apply the proceeds of any forfeited assets to Defendant's restitution obligations. Defendant recognizes the final decision to approve this application rests with the Attorney General. *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. 9 *et. seq.*

(e)   Cooperation on Forfeited Assets:

Defendant agrees to cooperate with the United States in passing clear title on all forfeited assets. Defendant also agrees to assist the United States in locating any assets that 1) are the proceeds of illegal conduct (as outlined in this Plea Agreement)

Plea Agreement- 23

and 2) have not been dissipated. If such assets are located, then Defendant will stipulate to their forfeiture.

(f)    Waiver:

Defendant agrees to waive oral pronouncement of forfeiture at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B).

(g)    Non-Abatement of Criminal Forfeiture:

Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement, including any substitute property subject to forfeiture, shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount and substitute property subject to forfeiture in satisfaction of the money judgment, is collected in full.

14.    Supervised Release:

The parties agree to recommend that the Court impose a 3-year term of supervised release. The parties are free to advocate for any special conditions they believe are appropriate.

15.    Mandatory Special Penalty Assessment:

Defendant agrees to pay the $400 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington. *See* 18 U.S.C. § 3013.

16.    Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, then Defendant agrees to earn the money to pay toward these obligations by participating in Bureau of Prisons' Inmate Financial Responsibility Program.

Plea Agreement- 24

17.   Additional Violations of Law Can Void Plea Agreement:

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

18.   Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court.  Defendant waives his right to appeal his conviction, but reserves his right to appeal the sentence if one of the following occurs: 1) the Court imposes a sentence based on a fraud loss exceeding $175,000; 2) the Court imposes restitution or a money judgment greater than $211,000; or 3) the Court imposes a fine.  Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

19.   Integration Clause:

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution.  This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.  The parties agree that this

//

//

//

//

Plea Agreement- 25

agreement cannot be modified except in writing that is signed by the United States and Defendant.

Approval and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

William D. Hyslop
United States Attorney

_____     8/29/19
George J.C. Jacobs III                          Date
Assistant United States Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney. I understand and voluntarily enter into the Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____     8-29-19
WILLIAM OLDHAM MIZE #3                   Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to

Plea Agreement- 26

plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's pleas of guilty.

John Nollette          # 5474
Attorney for Defendant

8-29-19
Date

Plea Agreement- 27